IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-01670-PAB-KMT

SCOTT LAVERNE BESEAU,

    Plaintiff,

v.

ALLEN COOPER, in his official capacity as Sheriff, and
NATCORE HEALTHCARE INDUSTRIES, INC., a Colorado corporation,

    Defendants.

---

# ORDER

---

This matter comes before the Court on the Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 by Defendant Allen Cooper in his Official Capacity as Sheriff of Fremont County [Docket No. 151] and Defendant NatCore Healthcare Industries Inc.'s Motion for Summary Judgment [Docket No. 162]. Plaintiff has responded to both motions [Docket Nos. 170, 171] and defendants have each replied [Docket Nos. 179, 182].

## I. BACKGROUND[1]

### A. Facts from Defendant Cooper's Motion for Summary Judgment

Fremont County (the "County") contracted with NatCore Healthcare Industries, Inc. ("NatCore") to provide healthcare services at the Fremont County Detention Center (the "jail") between January 1, 2017 and December 31, 2017. Docket No. 151 at 3,

---

[1] The following facts are undisputed unless otherwise indicated.

¶¶ 1-2. On or around March 6, 2017, the Fremont County Sheriff's Office (the "Sheriff's Office") implemented a new set of Lexipol-based written policies and procedures related to "Medical/Mental Health" for the jail; on or around June 6, 2017, the Sheriff's Office implemented an updated version of the policies and procedures. *Id.*, ¶¶ 3-4. Plaintiff was detained at the jail from July 1, 2017 through approximately 6:05 p.m. on July 3, 2017. *Id.*, ¶ 6.

NatCore's Medication Verification Data Sheet shows that plaintiff had prescriptions for two benzodiazepine medications: alprazolam (i.e., Xanax) and oxazepram. *Id.* at 5, ¶ 18. On Sunday[2] July 2, 2017 around 2:48 p.m., Daniel Vaught, NatCore's CEO and a licensed nurse practitioner, gave orders to place plaintiff on the benzodiazepine withdrawal protocol (the "protocol"), to place plaintiff on a medical watch where he was observed every 30 minutes, and to administer the protocol medications to plaintiff. *Id.*, ¶ 19. NatCore administered a CIWA-AR Score Sheet assessment tool to assess whether plaintiff was experiencing benzodiazepine withdrawal; the results did not require placing plaintiff on the protocol, but Mr. Vaught placed plaintiff on the protocol because of "red flags" indicating that plaintiff had benzodiazepine dependence and possible abuse. *Id.* at 5-6, ¶ 20.

At 4:00 p.m., NatCore medical was called to T-pod to attend to plaintiff. *Id.*, ¶ 21. At 4:21 p.m., a sheriff's deputy wrote in plaintiff's Inmate Welfare Log "medical in for seizure," and that someone called medical personnel because plaintiff was shaking and

---

[2] Sheriff Cooper's motion for summary judgment states that this happened on "Saturday, July 2, 2017," Docket No. 151 at 5, ¶ 19, and plaintiff does not dispute this. Docket No. 171 at 6, ¶ 18. However, July 2, 2017 was a Sunday and Sheriff Cooper's motion later refers to July 3, 2017 as a Monday.

2

could not talk, but that medical stated that it was normal. *Id.*, ¶ 22. At 4:26 p.m., the same deputy wrote in plaintiff's Inmate Welfare Log that plaintiff had "received meds." *Id.*, ¶ 23. At approximately 4:51 p.m., NatCore personnel administered additional medication to plaintiff and documented their observations and treatment of plaintiff. *Id.*, ¶ 25. The Inmate Welfare Log shows that at 7:09 p.m. plaintiff was "On Back/On Floor/Visibly Breathing" and at 8:02 p.m. he was "Awake on Floor." Docket No. 151-20 at 1. The parties dispute whether plaintiff was in distress at this time. Docket No. 151 at 6, ¶ 26; Docket No. 171 at 6-7, ¶ 26.

On Monday July 3, 2017, a deputy noted "Awake – not talking" and "Awake – Medical" in plaintiff's Inmate Welfare Log at 7:15 a.m. and 7:30 a.m. respectively. Docket No. 151 at 6-7, ¶¶ 27-28. At 7:44 a.m., NatCore personnel responded to a call to T-pod for an unresponsive patient. Docket No. 171 at 7, ¶ 29; Docket No. 182 at 7, ¶ 29; Docket No. 151-23 at 1-2. NatCore personnel documented plaintiff's condition, including that plaintiff had soiled himself and was not verbally responsive for a period of time. Docket No. 151 at 7, ¶ 29; Docket No. 171 at 7, ¶ 29. A deputy noted "Awake – Medical" and "Awake – Moving to new cell" in plaintiff's Inmate Welfare Log at 7:45 and 8:00 a.m. respectively. Docket No. 151 at 7, ¶¶ 30-31. The progress notes state that, at 8:04 a.m., a deputy attempted to shower plaintiff, but called for medical assistance because plaintiff collapsed in the shower and the deputy thought plaintiff had a seizure. Docket No. 151-23 at 2. NatCore personnel responded to the shower area. Docket No. 151 at 7, ¶ 33.

At 2:15 p.m., Mr. Vaught gave voice orders to administer additional medications to plaintiff. *Id.*, ¶ 34. At 6:05 p.m. plaintiff was released from the jail. *Id.*, ¶ 35. Shortly

3

after arriving home, plaintiff was flown to UC Health Memorial Hospital in Colorado Springs via Flight-for-Life. *Id.*, ¶ 36. Plaintiff remained in the hospital for nine days. *Id.*, ¶ 37. No definitive diagnosis for plaintiff's condition was reached. *Id.*, ¶ 38.

Before July 1, 2017, plaintiff had no seizure problems. Docket No. 171 at 8, ¶ 1. The jail booking records and medical reports do not reference any issues with plaintiff's walking or mobility upon arrival at the jail. *Id.*, ¶¶ 2-3. At a June 27, 2017 medical appointment with Dr. James Reppert, plaintiff's primary care physician, there were no reported memory issues, seizures, or back problems. *Id.*, ¶ 5, 7.

Dr. Reppert testified as his deposition that he saw plaintiff on July 27, 2017, after his release from the hospital. Docket No. 170-2 at 5. Plaintiff informed Dr. Reppert that he was having memory problems and weakness in his lower extremities. Docket No. 171 at 3, ¶ 9. Dr. Reppert could not determine the cause of plaintiff's physical or mental complaints, apart from noting that compression fractures in plaintiff's back were recent.[3] Docket No. 170-2 at 5-6. None of plaintiff's experts offer an opinion that plaintiff sustained any injury as a result of his time in jail or as a result of any care that plaintiff did or did not receive at the jail.[4] Docket No. 151 at 4, ¶ 9. Plaintiff's expert,

---

[3] Plaintiff states that plaintiff reported a number of issues to Dr. Reppert, and that Dr. Reppert indicated that there was some evidence that plaintiff suffered a closed head injury and that his physical condition was impaired. Docket No. 171 at 3, ¶ 9. However, plaintiff does not cite any medical evidence that these injuries or conditions were a result of plaintiff's time in jail. *Id.*

[4] Plaintiff states that, as to Dr. Reppert, this fact is "partially disputed," but does not dispute this fact as to plaintiff's other experts. *See* Docket No. 171 at 3, ¶ 9. As noted, plaintiff's denial regarding Dr. Reppert does not state that plaintiff sustained any injury from his time in jail. *See id.* The Court therefore deems this fact as undisputed.

4

Lori Roscoe,[5] did not offer an opinion that plaintiff's alleged injuries were caused by a policy of the Sheriff's Office.[6]  *Id.*, ¶ 11.

Neither NatCore nor the Sheriff's Office had established written procedures for (1) criteria and justification for when a detainee cannot be taken to court due to a medical problem, (2) medical examinations of detainees prior to release, (3) more frequent examination and evaluation of detainees who have suffered seizures while in detention, (4) notifying Travis Walters, a Physician Assistant, that a person in custody was having or had a seizure.  Docket No. 171 at 9-11, ¶¶ 12-13, 15, 23.  Additionally, in 2017 there were no protocols in place at the jail concerning when a detainee should be hospitalized when he had one or more seizures.  *Id.* at 11, ¶ 24.

### B.  Additional Facts from Defendant NatCore's Motion for Summary Judgment

NatCore operates pursuant to a set of written policies and procedures, although plaintiff disputes that NatCore abides by these policies or that they are sufficient.[7]

---

[5] Ms. Roscoe is an Advanced Practice Registered Nurse with a number of higher education degrees, including Doctor of Nursing Practice.  *See* Docket No. 170-3 at 3. Plaintiff refers to Ms. Roscoe as "Dr. Roscoe," a title she has earned.  *See* Docket No. 171 at 3, ¶ 11.  However, to avoid confusion, in this order the Court will refer to medical doctors as "doctors" and refer to Lori Roscoe as Ms. Roscoe.

[6] Plaintiff states that this is "partially disputed" and that Ms. Roscoe has indicated that defendants gave inadequate medical care, citing Ms. Roscoe's report.  Docket No. 171 at 3, ¶ 11.  This violates the Court's Practice Standards, which state that any denial shall be accompanied by a "specific reference to material in the record supporting the denial."  *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.b.iv.  Additionally, this response states that Ms. Roscoe has identified failures by defendants, but does not in fact state that plaintiff's injuries were caused by a policy of the Sheriff's Office.  Docket No. 171 at 3, ¶ 11.  This fact is therefore undisputed.

[7] These facts are additional undisputed facts.  To the extent NatCore's motion for summary judgment repeats facts that the Court has already noted in Section I.A, the

Docket No. 162 at 2, ¶ 2; Docket No. 170 at 3, ¶ 2.  NatCore has a written policy and procedure for inmates suffering from seizures and alcohol and benzodiazepine withdrawal.[8]  Docket No. 162 at 2-3, ¶¶ 3, 5.  NatCore periodically sent inmates to the hospital, but otherwise provided all treatment on site at the jail.  *Id.* at 3, ¶ 6.  NatCore developed its policies and procedures in conjunction with Dr. E. Stein Bronsky, an emergency medicine physician at Penrose Hospital.  *Id.*, ¶ 8.

On July 2, 2017, a Natcore employee completed a Medical Assessment of plaintiff; the assessment revealed that plaintiff was currently taking alprazolam and had a history of open heart surgery, but no history of seizures or of recent injury.  *Id.*, ¶ 10.  In the assessment, the NatCore employee wrote that plaintiff was shaking and that plaintiff told the employee it was due to anxiety.  *Id.*, ¶ 11.  On July 2, 2017, Barbara Haycraft[9] delivered plaintiff's medications to the jail.  *Id.* at 4, ¶ 12.  NatCore verified the type and quantity of medications, and recognized that plaintiff was missing 45 one milligram pills of alprazolam since his refill four days prior to being detained at the jail.  *Id.*, ¶¶ 13-14.  On July 3, 2017, Adam Beaty, a NatCore employee, contacted Dr. Reppert's office, and Dr. Reppert's office faxed Mr. Beaty pertinent medical records.  *Id.* at 6, ¶ 28.

NatCore's contract with Fremont County specified the required healthcare services and costs for which NatCore was responsible.  Docket No. 170 at 12, ¶ 5.  The

---

Court will not repeat them.

[8] Plaintiff does not dispute that NatCore has these policies, but does dispute that NatCore followed them.  Docket No. 170 at 3, ¶¶ 3, 5.

[9] Plaintiff identifies Ms. Haycraft as his wife.  Docket No. 79 at 7, ¶ 26.

contract provided that Fremont County was to pay NatCore $700,000 annually. *Id.*, ¶ 6. The contract required NatCore to have a "physician/physician extender"[10] available for phone consultation 24 hours a day, 7 days a week. *Id.*, ¶ 7. The contract gave the Fremont County Sheriff the right to determine the healthcare staff working in the jail. *Id.*, ¶ 8. At the time of plaintiff's reported seizure on July 2, 2017, plaintiff was on a medical watch due to the withdrawal protocol. *Id.* at 13, ¶ 10. According to the Detention Captain at the Sheriff's Office, when someone is placed on medical watch the medical staff notifies the Sheriff's Office booking staff and the shift supervisor. *Id.* Detainees on medical watch are supposed to be checked at least every half hour; however, the Sheriff's Office's records indicate a four-hour period without a welfare check on the night of July 2, 2017. *Id.*, ¶ 11. Welfare checks made at 7:09 p.m. and 10 p.m. on the night of July 2, 2017 indicate that plaintiff was on the floor on his back, but was breathing. *Id.*, ¶ 12.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes

---

[10] The contract between the County and NatCore defines a "physician extender" as "[a]n advanced level healthcare professional such as a Nurse Practitioner, Physician Assistant, or Clinical Nurse Specialist." Docket No. 170-6 at 43.

over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

### A. Defendant Cooper's Motion for Summary Judgment

Plaintiff's complaint brings a claim against "Fremont County and Sheriff Cooper in his official capacity and the Sheriff's Department." Docket No. 79 at 11. A suit against a government officer in his official capacity is a suit against the entity of which an officer is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). The Court interprets this to be a claim against defendant Allen Cooper in his official capacity as head of the Fremont County Sheriff's Office for deliberate indifference to serious medical needs in violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. Docket No. 79 at 11-13.

The complaint alleges that the Sheriff's Office knew that the services provided by NatCore and NatCore's predecessor were inadequate, the Sheriff's Office failed to monitor the quality of services, "members of the Sheriff's Department and NatCore acted with deliberate indifference in not ascertaining whether Mr. Beseau had any prior seizure history and seeking hospitalization and further diagnosis," the Sheriff's Office violated plaintiff's rights by failing to provide proper medical care, "which is demonstrated by a pattern of behavior," and these deficient policies resulted in injury to plaintiff. *Id.* at 12, ¶¶ 57-59.

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436

U.S. 658, 690 (1978) (footnote omitted). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694. To succeed on his claim, plaintiff must (1) identify "a government's policy or custom"; (2) "that caused the [constitutional] injury"; and (3) "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (internal quotation marks and citations omitted). In other words, plaintiff must establish: "(1) [an] official policy or custom, (2) causation, and (3) state of mind." *Id*.

The complaint alleges that the Sheriff's Office was deliberately indifferent by failing to oversee NatCore and allowing NatCore to provide inadequate medical services. Docket No. 79 at 12.

The Court understands plaintiff to be making two arguments concerning the Sheriff's Office's liability: first, that the Sheriff's Office had a policy of allowing NatCore to operate the jail without proper medical protocols, and second that the care provided to plaintiff did not match the policies that were in place. As to the first, plaintiff challenges the Sheriff's Office's policy of allowing NatCore to operate without protocols on (1) hospitalization of a detainee, (2) caring for detainees with seizures, and specifically seizures related to benzodiazepine withdrawal, (3) reporting seizures up the "chain of command," (4) reporting seizures to the detainee's primary care physician, (5) proper examination, documentation, and monitoring of detainees after seizures, (6) Sheriff's Office staff recommendations concerning the need for a detainee's

hospitalization, (7) the decision that an inmate was too medically compromised to attend a bail hearing, (8) documenting a decision to place a detainee in a wheelchair, (9) the necessity of medical evaluations prior to release, and (10) a system to catch failures to follow the Med Watch monitoring system employed by defendants. Docket No. 171 at 15-18. Plaintiff also argues that the jail had insufficient medical equipment and personnel. *Id.* at 14-15. Broadly, plaintiff argues that the Sheriff's Office and NatCore exhibited deliberate indifference because "specific requirements for the protection of detainees having seizure issues and particularly seizure issues connected with Benzo withdrawal were not created." *Id.* at 18.

As to plaintiff's second allegation, plaintiff argues that the Med Watch[11] system employed by the jail and NatCore was inadequate for detainees with seizure issues and was not properly carried out. *Id.*

### 1. Deliberate Indifference Standard

Deliberate indifference in the municipal liability context is an objective standard that

> may be satisfied "when the municipality has actual or constructive notice that its action or failure is substantially certain to result in a constitutional

---

[11] Med Watch is the system used to monitor inmates with medical issues every 30 minutes. Docket No. 171 at 18. The parties do not explain the difference between NatCore's and the Sheriff's Office's responsibility under Med Watch. *See id.*; Docket No. 151 at 23. However, plaintiff's response to Sheriff Cooper's motion for summary judgment argues that the employment of Med Watch was inadequate because (1) NatCore did not alert the Sheriff's Office of seizure issues (2) the 30-minute checks were not carried out and the Sheriff's Office did not have a process to catch these failures; and (3) the procedures do not require officers to enter a cell when a detainee is "on the floor, off his bed." Docket No. 171 at 18. The Court therefore construes the respective responsibilities under Med Watch to be that NatCore prescribes Med Watch and sheriff deputies are responsible for checking on the detainee every 30 minutes.

>violation, and it consciously and deliberately chooses to disregard the risk of harm." Although a single incident generally will not give rise to liability, "deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action." The official position must operate as the "moving force" behind the violation, and the plaintiff must demonstrate a "direct causal link" between the action and the right violation. That is, "[w]ould the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?"

*duBois v. Payne Cnty. Bd. of Cnty. Comm'rs*, 543 F. App'x 841, 849 (10th Cir. 2013) (unpublished) (quoting *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002)).

Deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). "[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* Plaintiff is not required to have a claim against an individual defendant in order to state a claim against the Sheriff's Office; "municipal liability under *Monell* may exist without individual liability." *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1033 (10th Cir. 2020) (citing *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 310 (10th Cir. 1985) ("Although the acts or omissions of no one employee may violate an individual's constitutional rights, the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights.")).

### 2. Causation

Plaintiff alleges that he has continued to suffer medical-related problems that "in all probability have been caused by head and brain trauma suffered as part of his

arrest, by the failure to provide necessary treatment while incarcerated and oxygen shortages because of the seizures. Mr. Beseau has suffered physical injury." Docket No. 79 at 9, ¶ 34. To establish causation on his *Monell* claim, plaintiff must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Schneider*, 717 F.3d at 770 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, (1997)); *City of Canton v. Harris*, 489 U.S. 378, 391 (1989) (requiring the identified deficiency to "be closely related to the ultimate injury").

Sheriff Cooper argues that plaintiff cannot prove causation because there is no evidence that sending plaintiff to the hospital during his detention would have made a difference in his condition or healthcare outcomes, no medical provider has been able to diagnose the cause of plaintiff's post-detention condition, no medical provider has offered an opinion that plaintiff sustained an injury from the treatment plaintiff did or did not receive at the jail, and there is no objective medical evidence that plaintiff suffered seizures at the jail. Docket No. 151 at 15-17.

The entirety of plaintiff's argument in response to causation states:

The assertion by the Defendant that Plaintiff cannot prevail because he cannot prove he was injured is quickly dispatched by the very fact that Mr. Beseau suffered a Constitutional injury. That alone is a bases [sic] for damages. In addition, but for the inadequate medical care and failure to provide necessary contracted for services, including transportation to a hospital, Mr. Beseau would not have required 911 emergency services after he was driven home by his wife and there would have been no need for Flight for Life services for transportation to the hospital. Further, during various periods, Mr. Beseau was conscious and clearly experienced upset and distress because of his condition. There is also evidence of pain and suffering. The evidence is sufficient for this matter

to be presented to the jury.[12]

Docket No. 171 at 18-19. This argument fails to respond to Sheriff Cooper's contention that plaintiff has not put forth any evidence that he was injured by inadequate medical care at the jail. The fundamental question is whether deliberately indifferent medical care caused plaintiff's injuries. Despite plaintiff's failure to respond to Sheriff Cooper's argument, the Court will construe plaintiff's statement that he "suffered a Constitutional injury" to be an argument that inadequate medical care caused plaintiff's medical conditions. *See id.*

### a. Expert Testimony

The Court first considers the expert testimony of the parties. None of plaintiff's experts offer an opinion that plaintiff sustained any injury as a result of his time in jail or as a result of any care that plaintiff did or did not receive at the jail. Docket No. 151 at 4, ¶ 9. Although Ms. Roscoe stated in her report that NatCore breached the standard of care, the report contains no opinion that any of the care the jail did or did not provide caused plaintiff's injures. *Id.*, ¶ 11. Similarly, Dr. Reppert was unable to attribute any of plaintiff's injuries to the care he received at the jail. *Id.*, ¶ 9. Although plaintiff claims that causation is apparent because he had to go to the hospital for nine days, the medical team at the hospital did not reach a definitive diagnosis. *Id.* at 7, ¶¶ 37-38. Plaintiff puts forward no evidence from any of his doctors that bringing him to the hospital earlier would have changed any of his conditions.

---

[12] The Court also notes that plaintiff originally brought a claim against the officers who arrested him for having injured him during the arrest. Docket No. 79 at 9. However, after discovery had begun, plaintiff dismissed this claim, Docket No. 119, and this theory of causation is no longer before the Court.

Defendants' experts, Dr. Trevor McNutt and Dr. David Greenblatt,[13] both opined that plaintiff was treated appropriately and that plaintiff's injuries were not caused by any care he did or did not receive at the jail. *Id.* at 4, ¶¶ 12-13. NatCore's expert, Dr. Gary Vilke, gave the opinion that plaintiff received proper treatment at the jail and that there was no evidence that healthcare personnel were deliberately indifferent to plaintiff's healthcare needs. *Id.* at 5, ¶ 17.

The expert opinions, whether of plaintiff or defendants, do not create any genuine issue of material fact on the issue of causation.

### b. Need for Expert Testimony Where Treatment is Allegedly Delayed

Although plaintiff fails to articulate the argument, the Court will consider whether, despite the lack of expert testimony on causation, a jury could appropriately determine causation from evidence that defendants delayed care for plaintiff. The Tenth Circuit has considered the necessity of expert medical testimony for deliberate indifference cases involving a delay in treatment and stated that "[w]hether expert testimony is necessary to prove deliberate indifference to a serious medical need depends on the nature and complexity of the medical issues in a particular case and what other evidence is available in the record." *Kellum v. Mares*, 657 F. App'x 763, 771 (10th Cir. 2016) (unpublished); *see also King v. Pratt*, 525 F. App'x 713, 722 (10th Cir. 2013) (unpublished) ("We agree with the authorities . . . holding that expert testimony is not required in cases where the jury can determine from the non-expert evidence presented

---

[13] Dr. Greenblatt is defendants' expert on benzodiazepine withdrawal. Docket No. 151 at 4, ¶ 13.

whether the delay caused additional harm."). Expert testimony on causation may be necessary when "the effects of delay may be so subtle or complex that a lay jury cannot adequately determine the issue of causation." *King*, 525 F. App'x at 722; *cf. Zartner v. Miller*, 760 F. App'x 558, 563 (10th Cir. 2019) (unpublished) (finding medical expert testimony necessary to establish causal link between tight handcuffing and bone fracture because there were two separate uses of force that could have caused the fracture).

The Court finds that expert testimony is necessary to determine the cause of plaintiff's injuries. Once plaintiff was released from the jail, he was admitted to a hospital. After nine days in the hospital, no definitive diagnosis was reached as to plaintiff's medical problems and no medical professional has attributed plaintiff's injuries to the care he received at the jail. Docket No. 151 at 4, 7, ¶¶ 9, 37-38. Plaintiff has not put forth any evidence that "could permit a reasonable jury 'to determine [that] the delay caused additional harm.'" *King*, 525 F. App'x at 722 (quoting *Ortiz v. City of Chicago*, 656 F.3d 523, 535 (7th Cir. 2011)). Without expert testimony linking the care plaintiff did or did not receive at the jail to his injuries, plaintiff has failed to raise a material dispute as to causation. *See Payne v. Werholtz*, 2007 WL 3273346, at *5 (D. Kan. Nov. 5, 2007) (finding plaintiff had not established causation in deliberate indifference case where neither of plaintiff's retained doctors opined that use of proper procedures would have made a difference or prevented plaintiff's death); *Beers v. Ballard*, 248 F. App'x 988, 991 (10th Cir. 2007) (unpublished) (citing lack of evidence that untimely response precluded life-saving treatment; no experts testified about effects of delay in treatment, and the court declined to speculate whether plaintiff "would have fared better

with prompter treatment").

### c. Pain and Suffering

The Court next considers plaintiff's argument that he experienced pain and suffering at the jail. Docket No. 171 at 19. Plaintiff stated at his deposition that the only thing he remembered from his time in jail was "[l]aying on the floor, unable to move, covered in my own feces and urine." Docket No. 171-1 at 3, 208:9-12. However, there is no indication when this occurred or how the Sheriff's Office or NatCore responded. *See id.* For example, on the morning of July 3, 2017, NatCore personnel went to T-pod for an unresponsive patient and documented that plaintiff had soiled himself. Docket No. 151 at 7, ¶ 29; Docket No. 171 at 7, ¶ 29. The progress notes state that, at 8:04 a.m., a deputy attempted to shower plaintiff, but called for medical assistance because plaintiff collapsed in the shower and the deputy thought plaintiff had a seizure. Docket No. 151-23 at 2. Plaintiff does not identify how a policy of the Sheriff's Office caused his pain and suffering or how a delay in medical care resulted in substantial harm. *See Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."). The closest argument plaintiff makes is that "the Med watch procedures do not require officers to enter the cell when the detainee is on the floor, off his bed, to obtain information on whether the detainee is conscious or had a seizure." Docket No. 171 at 18. However, this argument does not raise a genuine dispute that a policy caused plaintiff's pain and suffering.

The Court concludes that plaintiff has failed to raise a genuine dispute of

material fact regarding whether or not the Sheriff's Office caused his injuries because: (1) the doctors at the hospital could not identify the cause of his post-confinement condition, including whether his condition was caused by treatment or lack of treatment at the jail, Docket No. 151 at 7, ¶ 38; (2) plaintiff's experts do not identify the cause of his medical problems and have no objective evidence that he experienced seizures at the jail,[14] *id.* at 4, ¶ 9; Docket No. 151-8 at 5; and (3) defendant's experts cannot explain plaintiff's medical issues at the jail and do not identify any link to the care plaintiff received.  Docket No. 151 at 4, ¶¶ 12-13.

Because plaintiff cannot show causation, he cannot prove a claim for deliberate indifference.  Therefore, the Court will grant Sheriff Cooper's motion for summary judgment.

### B.  Defendant NatCore's Motion for Summary Judgment

Plaintiff brings three claims against NatCore – a deliberate indifference claim pursuant to § 1983, a negligence claim, and a gross negligence claim.  Docket No. 79 at 13-21.  Plaintiff alleges that NatCore acted with deliberate indifference to plaintiff by disregarding the clear danger of plaintiff's seizures and thereby caused him injury. Docket No. 79 at 19-20.  NatCore argues that plaintiff cannot show that a NatCore policy caused plaintiff's injuries because he presents no evidence linking his post-detention conditions to treatment or lack of treatment at the jail and NatCore responded with medical personnel each time plaintiff allegedly had a seizure.  Docket No. 162 at

---

[14] Plaintiff notes that Dr. Sumant Rawat's May 26, 2020 report states that plaintiff was returning for treatment related to "traumatic brain injury with possible seizure disorder."  Docket No. 171 at 3, ¶ 12; Docket No. 171-4 at 1.  However, plaintiff does not argue that Dr. Rawat determined that plaintiff's episodes at the jail were seizures.

13-15. The Court has already found that plaintiff cannot raise a genuine dispute of material fact about whether his injuries were caused by any care he did or did not receive at the jail. Therefore, the Court grants NatCore's motion for summary judgment on this claim.

Because the Court has dismissed all federal claims, the Court declines to exercise jurisdiction over plaintiff's state law claims against NatCore for negligence and gross negligence. "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."); *see also* 28 U.S.C. § 1367(c)(3) (permitting a district court to decline supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction").

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 by Defendant Allen Cooper in his Official Capacity as Sheriff of Fremont County [Docket No. 151] is **GRANTED**. It is further

**ORDERED** that plaintiff's fourth cause of action, a 42 U.S.C. § 1983 claim against defendant Cooper in his official capacity, is **DISMISSED with prejudice**. It is further

**ORDERED** that Defendant NatCore Healthcare Industries Inc.'s Motion for Summary Judgment [Docket No. 162] is **GRANTED in part**. It is further

**ORDERED** that plaintiff's fifth cause of action, a 42 U.S.C. § 1983 claim against defendant NatCore, is **DISMISSED with prejudice**. It is further

**ORDERED** that the Court declines to exercise pendent jurisdiction over plaintiff's sixth cause of action, negligence by NatCore, and this claim is **DISMISSED without prejudice**. It is further

**ORDERED** that the Court declines to exercise pendent jurisdiction over plaintiff's seventh cause of action, gross negligence and reckless wanton conduct by NatCore, and this claim is **DISMISSED without prejudice**.[15] It is further

**ORDERED** that this case is **CLOSED**.

DATED March 30, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[15] Under Colo. Rev. Stat. § 13-80-111, if claims are properly commenced within the statute of limitations and involuntarily dismissed because of lack of jurisdiction, the plaintiff "may commence a new action upon the same cause of action within ninety days after the termination of the original action or within the period otherwise allowed by this article, whichever is later." *See also Artis v. Dist. of Columbia*, 138 S. Ct. 594, 598 (2018) (holding that 28 U.S.C. § 1367(d) tolls the statute of limitations for state law claims asserted under § 1367(a) during the pendency of the federal litigation in which such claims are brought and for thirty days following involuntary dismissal of those claims on jurisdictional grounds).